IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN THOMAS REYNOLDS, | Civil No. 1:21-CV-1251 |
| Petitioner, | |
| v. | |
| SCOTT FINLEY, | |
| Respondent. | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a petition for writ of habeas pursuant to 28 U.S.C. § 2241 filed by Brian Thomas Reynolds ("Petitioner" or "Reynolds"), a federal prisoner confined at FCI-Schuylkill, against Respondent Scott Finley, the Warden of FCI-Schuylkill.  Petitioner seeks relief under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act,[1] Pub. L. No. 116-136, § 12003(b)(2), 134 Stat 281 (2020) and the Equal Protection Clause of the Fourteenth Amendment. (Docs. 1, 2, 6, 7.)  After considering the pleadings and relief sought by Petitioner, the court will dismiss the petition due to Reynolds' failure to exhaust his administrative remedies and for lack of jurisdiction.  As such, Reynolds' motions to conduct discovery, amend his petition, enter a temporary restraining order, and

---

[1] The CARES Act temporarily expands the authority of the Director of the Bureau of Prisons ("BOP") to place prisoners on home confinement earlier than previously permitted during the national emergency concerning the coronavirus disease ("COVID-19") and as the Attorney General finds that emergency conditions are materially affect the functioning of the BOP.

direct Respondent to further respond to his petition will be denied. (Docs. 8, 12, 13, 15.)

## BACKGROUND

Reynolds is a 54-year-old man serving a 46-month sentence imposed by the United States District Court for the Eastern District of Virginia after he pled guilty to wire fraud and the unlawful possession of a firearm. If Reynolds receives all possible good time credit, his projected release date is June 12, 2022. (Doc. 11–1, p. 6.)[2]

Reynolds filed his habeas petition on June 12, 2021 seeking release on home confinement under the CARES Act. (Docs. 1, 2, 6, 7.) Reynolds claims Bureau of Prisons ("BOP") staff twice misapplied outdated BOP guidelines to deny his request for release under the CARES Act. First, in December 2020, and relying on an April 22, 2020 BOP memorandum concerning factors to be assessed when considering a prisoner's suitability for home confinement, staff determined Reynolds was ineligible for CARES Act relief due to a 35-year-old misdemeanor conviction for assault. (Docs. 1, 1-1, 7.) The April 2020 memorandum advised that inmates with a "primary or prior offense history [of] violence, a sex offense, or terrorism" were ineligible for consideration. (Doc. 7, p. 2.) According to Reynolds, staff applied the wrong memorandum when determining his eligibility

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

for relief.  He argues prison officials should have applied the guidance set forth in a November 16, 2020 memorandum which did not include the disqualifying language related to violent offenses.  Had staff applied the correct guidelines, Reynolds argues he would have qualified for CARES Act relief and would be out on furlough at his Charlotte, North Carolina home.  (Docs. 1, 1-1, 2.)

The second time the BOP considered Reynolds for CARES Act relief was in 2021.  Reynold claims that on May 10, 2021 the BOP approved his release to home confinement as of June 15, 2021.  In anticipation of his release, Reynolds was placed in quarantine and provided an itinerary for his flight from Harrisburg, PA to Charlotte, NC.  Also, his family expended monetary resources in preparation for his return.  On June 10, 2021, BOP officials advised him that an error had been made and that based on an April 13, 2021 memorandum he was not suitable for home confinement under the CARES Act again due to his prior assault offense.  (Docs. 1, 2, 7, 11.)  Presently, Reynolds' home detention eligibility date is January 24, 2022.  (Doc. 11-1, p. 6.)

On March 8, 2021, Reynolds filed administrative remedy 1071835-F1 at the institutional level appealing the denial of his request for release under the CARES Act. (*Id.,* p. 20.)  The request was denied on March 18, 2021. (*Id.*)  Reynolds filed an appeal to the regional level on April 15, 2021. (*Id.*, p. 21.)  The appeal was rejected on May 14, 2021 because several pages were not legible. (*Id.*, pp. 4, 21.)

Reynolds did not resubmit his appeal or file an appeal to the next stage of the grievance process. (*Id*., p. 4.) With less than six months remaining prior to his release on home confinement (January 25, 2022), Reynolds believes he "fall[s] under the irreparable harm exception for exhaustion of administrative remedies and if [he] pursued administrative review now [he] would not obtain relief before [he is] released." (Doc. 2, Reynold's Decl., p. 5.)

On September 5, 2021, Reynolds filed an emergency motion for a temporary restraining order seeking an order requiring prison officials to allow him to purchase stamps, envelopes, paper, and writing instruments during the recent "lockdown" imposed following a prison camp inmate testing positive for COVID-19. He also seeks to halt the BOP's practice of opening his legal mail outside of his presence. (Doc. 12.) Additionally, Petitioner has filed a motion to amend his petition seeking to challenge the BOP's reliance on information contained in his pre-sentence report, specifically, his 35-year-old assault charge. (Doc. 13.) Respondent filed a response to the June 12, 2021 petition on September 7, 2021. (Doc. 11.)

In Petitioner's September 20, 2021 reply, he asserts that Respondent misconstrues the issue raised in his petition. (Doc. 14.) Reynolds states he is seeking a determination that the BOP violated his Equal Protection rights under the Fourteenth Amendment and not the CARES Act. (*Id.*, p. 1.) In response to the

4

Respondent's exhaustion argument, Reynolds argues that when prison officials cancelled his release on June 10, 2021, he believed any further exhaustion efforts were futile. (*Id*., pp. 2–3.) Reynolds argues that his due process claim "ONLY became clear and cognizable after Respondent cancelled [his] CARES Act release on June 10, 20[21]" which did not leave him sufficient time to avail himself of the administrative remedy process, making any attempt futile. (*Id*., pp. 2–3.) He also adds that Respondent's procedural default claim is negated because administrative remedy 1071835 "had nothing to do with his current constitutional claim under the instant 2241 petition." (*Id*., p. 2.)

## JURISDICTION

The writ of habeas corpus is limited to challenges to the fact of confinement, where a petition seeks an immediate or speedier release. *See Preiser v. Rodriguez*, 411 U.S. 475, 485–86 (1973). Federal prisoners may use a petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, to challenge the "execution" of their sentence. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005) (allowing federal prisoner to bring § 2241 challenge to BOP's decision that limited placement in a community corrections center noting that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution.") Because Reynolds' petition asks that the BOP change the location and his conditions of his confinement by allowing him to serve

his sentence from his home during the pandemic his "petition crosses the line beyond a challenge to, for example, a garden variety prison transfer." (*Id.*) Thus, Reynolds' challenge to the denial of his CARES Act request, which would result in him serving his sentence under home confinement if successful, is appropriately brought under a § 2241 petition. *See Butcher v. Howard*, No. 1:20-CV-01994, 2021 WL 37994 (M.D. Pa. Jan. 5, 2021) (§ 2241 appropriate vehicle to review federal inmate's CARES Act request for home confinement).

## DISCUSSION

Respondent raises several arguments as to why Reynolds' § 2241 petition should be denied: (1) Petitioner failed to exhaust his administrative remedies; and (2) BOP decisions concerning home confinement under the CARES Act are not subject to judicial review. (Doc. 11.) The court will address each of Respondent's arguments *seriatim*.

### A. Reynolds' Failure to Exhaust Administrative Remedies is Unexcused.

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (holding "that prisoner's procedural default of his administrative remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice

6

attributable thereto"). This mandate "has developed through decisional law in applying principles of comity and federalism" to claims brought under § 2241. *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986). Exhaustion of administrative remedies is required because: "(1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors." *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the requirements of the BOP's Administrative Remedy Program. 28 C.F.R. § 542.10 *et seq.* Thus, "a federal prisoner who...fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Moscato*, 682 F.2d at 762. If the petitioner cannot demonstrate cause and prejudice for their procedural default, the habeas petition should be dismissed. *Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) (requiring federal prisoner to exhaust administrative remedies before bringing claim under § 2241).

Exhaustion is not required, however, if there is no opportunity to obtain adequate redress, if the issue presented only pertains to statutory construction, or if the prisoner makes an affirmative showing of futility. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Schandelmeier,* 819 F.2d at 53; *Bradshaw*, 682 F.2d at 1052.

Courts within this district addressing federal inmates' requests for home confinement under the CARES Act have consistently enforced the exhaustion requirement. *See Powers v. Quay*, No. 4:20-CV-1519, 2021 WL 148640 (M.D. Pa. Jan. 15. 2021); *Gonzalez v. Howard*, No. 1:20-CV-1992, 2021 WL 65989 (M.D. Pa. Jan. 7, 2021); *Brennerman v. White*, No. 3:20-CV-1069, 2020 WL 8617622 (M.D. Pa. Dec. 10, 2020), *report and recommendation adopted in relevant part*, No. 3:20-CV-1069, 2021 WL 682070 (M.D. Pa. Feb. 22, 2021).

The BOP has adopted a three–tiered administrative remedy procedure where an inmate may submit complaints relating to any aspect of confinement. 28 C.F.R. § 542.10, *et seq.* Generally, an inmate must first present his complaint to staff to informally resolve the matter. *Id*. § 542.13(a). If informal resolution is unsuccessful, the inmate may file a formal written complaint to the Warden on the appropriate form within twenty (20) calendar days of the date on which the events which form the basis for the complaint took place. *Id.* § § 542.14(a). If dissatisfied with the response, the inmate may file an appeal to the BOP Regional

8

Director within twenty (20) calendar days. *Id.* § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the General Counsel (Central Office) within thirty (30) calendar days from the date of the Regional Director's response. (*Id.*) The appeal to the Central Office is the final level of administrative review. (*Id.*)

In the matter at bar, Reynolds states he should not be required to exhaust his available administrative remedies which could take "5 to 6 months". (Doc. 2, p. 5.) He notes that he is within 6 months of his expected release to home confinement date and argues "8 months to a year" may pass before he receives responses from the regional level and central office thus making the process unavailable. (*Id.*) Reynolds claims he will suffer irreparable harm if required to exhaust his administrative remedies as to his denial of CARES Act relief. (*Id.*, p. 5.) None of these reasons make the administrative remedy inadequate or futile.

The record before the court demonstrates Reynolds pursued, but inexplicably abandoned, his March 2021 administrative remedy with respect to the BOP's denial of his request for home confinement under the CARES Act. Specifically, in March 2021, Reynolds filed an administrative remedy appealing the denial of Cares Act relief. (Doc. 11-1, p. 20.) It was denied at the institutional level on March 18, 2021. (*Id.*) Petitioner filed an appeal to the regional director on April 15, 2021. (*Id.*, p. 21.) It was rejected on May 14, 2021 due to several

pages being illegible. (*Id.*) Reynolds did not attempt to correctly resubmit his appeal or complete the administrative remedy process and filed his petition in this court less than a month later.

The court thus finds that Reynolds failed to exhaust his available administrative remedies with respect to his December 2020 or May 2021 CARES Act request for home confinement prior to filing this action as required by *Moscato*. (Doc. 11, pp. 6–7.) Nevertheless, Reynolds asks this court to excuse his failure to exhaust based on futility. Reynolds claims the months lost to the administrative appeal process would only prolong his risk of suffering irreparable harm due to his anticipated January 2022 release date (which is not based on CARES Act relief). Aside from his assertion of an anticipated extended response delay, which notably is not reflected by the timeline of his abandoned administrative remedy, Reynolds' belief that the BOP's grievance process would not conclude prior to his release date does not excuse his failure to exhaust all available administrative remedies. The record before the court neither demonstrates any external impediment to Reynolds' ability to pursue an administrative remedy related to the events in December 2020 or May 2021, nor explains his failure to complete the grievance process as to the administrative remedy filed in March 2021. Thus, the court agrees with Respondent that

Petitioner's § 2241 petition must be dismissed for failure to exhaust his administrative remedies.[3]

### B. The Court Does Not Have Authority to Review BOP's Denial of Home Confinement Request.

To the extent Petitioner seeks this court to review the BOP's decision denying his release to home confinement under the CARES Act, even if Reynolds had exhausted his administrative remedies, the court could not direct the location for service of his federal sentence because that authority is delegated exclusively to the Attorney General, and by designation, the BOP. *See* 18 U.S.C. §§ 3621(b), 3624(c)(2); *see also Gonzalez*, 2021 WL 65989, at *4 (federal court lacks authority to transfer federal inmate to home confinement); *Frazier v. Tate*, Case No. 1:20-CV-0213, 2020 WL 8474708 (W.D. Pa. Dec. 18, 2020), *report and recommendation adopted by,* Civ. No. 20-0213, 2021 WL 461935 (W.D. Pa. Feb. 9, 2021) (same).

While the CARES Act temporarily expands the Attorney General's authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)

---

[3] Insofar as Reynolds is attempting to raise an Equal Protection or Due Process claim based on the BOP's release of other inmates under the CARES Act who had similar convictions, he cannot do so within his habeas matter. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). Reynolds must file such constitutional claims in a *Bivens* civil rights action in the district where he is confined after exhausting his administrative remedies.

. . ."[4] during the pandemic, it does not provide federal courts with jurisdiction to direct or grant such relief.  Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is "not reviewable by any court."  18 U.S.C. § 3621(b)(5).

While the court lacks jurisdiction to override the BOP's CARES Act decision, Reynolds can seek judicial review if the BOP refused to make an individualized determination as to his eligibility for release on home confinement under the CARES Act.  *See Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1991).  Here, Reynolds does not assert the BOP ignored his request for consideration under the CARES Act.  Rather, Reynolds alleges the BOP considered his requests, and through a series of unfortunate events, granted him relief and then revoked it after it was determined an error had been made.  (Doc. 1.)  Moreover, Reynolds admits that the BOP has reestablished his release on home confinement date for this month.  Therefore, Reynolds has not shown that the BOP has refused to exercise its discretion to consider his CARES Act requests, or to establish a release

---

[4] **(2) Home confinement authority.**—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.  The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk level and lower needs on  home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

to home confinement date earlier than January 25, 2022, or otherwise violated the Constitution. Reynolds, therefore, is not entitled to the relief he seeks, and his 2241 petition will be denied.

## CONCLUSION

For the foregoing reasons, the court will deny Reynolds's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 4, 2022